## ADMINISTRACION DE SEGUROS DE SALUD DE PUERTO RICO, Plaintiff

v.

## TRIPLE–S SALUD, INC., Defendant

## CIVIL 14–1194CCC

United States District Court, D. Puerto Rico.

Signed 03/31/2015

---

Clarisa Sola–Gomez, Luis E. Pabon–Roca, Faccio & Pabon Roca, Maria Del C. Rosario–Hernandez, Law Office of Maria del C. Rosario–Hernandez, Michael C. McCall, Law Offices of Michael Craig McCall, San Juan, PR, Jesus E. Cuza–Abdala, Sanford L. Bohrer, Scott D. Ponce, Holland & Knight LLP, Miami, FL, for Plaintiff.

Ralph S. Tyler, Baltimore, MD, Carla S. Loubriel, Hato Rey, PR, Cesar T. Alcover–Acosta, Casellas, Alcover & Burgos PSC, San Juan, PR, for Defendant.

## REMAND ORDER

### CARMEN CONSUELO CEREZO,
United States District Judge

On February 11, 2014, the Puerto Rico Health Insurance Administration (hereinafter ASES, acronym for its Spanish name "Administración de Seguros de Salud") sent a Notice of Imposition of Sanctions (Notice) to Triple S Salud, Inc. (TSS) (D.E. 1–1) imputing that it negligently released protected health information of 18,000 persons it insured under a health services plan ("Mi Salud Platino") pursuant to a contract entered into with said agency. The Notice specifically charges TSS with multiple violations of provisions contained in their contract number 2012–000076, as well as of several federal regulations incorporated therein. Contending that the proceeding initiated by ASES was an action before a "court-like" state agency which alleged violations of federal regulations issued under the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d–1320e–2, and the Health Information Technology for Economic and Clinical Health Act (HITECH), 42 U.S.C. § 17901–17953, on March 11, 2014 TSS removed it to this Court under 28 U.S.C. §§ 1441(a) and 1442(a)(1) (D.E. 1).

Before the Court now is the Motion for Remand Pursuant to 28 U.S.C. § 1447(c) filed by ASES on April 10, 2014 (**D.E. 6**), the Opposition to Remand filed by TSS on April 24, 2014 (D.E. 10), and ASES' Reply in Support of Motion to Remand filed on June 4, 2014 (D.E. 14).

ASES grounds its petition for a remand on several theories: the claims being unripe and not justiciable, it does not act as a state court, TSS is not a "defendant," there is no federal jurisdiction and no such jurisdiction may be found to exist either under the "federal ingredient" test or under preemption, and TSS having failed to assert colorable federal defenses to justify a removal under 28 U.S.C. § 1442(a)(1). TSS opposed the remand, claiming in turn that there is a ripe justiciable controversy, that ASES qualifies as a functional "state court" for purposes of the removal statute, that the action arises under federal law, that even if not, federal issues are altogether decisive in the resolution of any state claims which suffice to confer federal jurisdiction, and, finally, that the case was properly removed as ultimately being a case against a federal contractor. Of all these arguments for and against removal/remand, we have sorted wheat from chaff and now address what we deem pertinent to the disposition of ASES' Motion for Remand.

### Removal Under 28 U.S.C. § 1441(a)

■ We start by expounding basic tenets of our removal jurisdiction. Assuming, without deciding, that the proceedings initiated against TSS by ASES fit within the

statutory definition of a "state court," see 28 U.S.C. § 1441(a), their removal to this federal court is only proper if the action could have initially been brought here. Given that there is no diversity of citizenship between the parties, federal jurisdiction would only lie if there is a federal question involved, 28 U.S.C. § 1331. It is generally recognized that there are two types of actions that may come within federal question jurisdiction: (1) those "in which federal law creates the cause of action," see Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), and (2) those with an "embedded federal question," see Merrell Dow Pharm., Inc., 478 U.S. at 808–809, 106 S.Ct. 3229, in which "a federal issue is decisive to the dispute and the federal ingredient ... is sufficiently substantial to confer the arising under jurisdiction." One & Ken Valley Housing Grp. v. Me. State Hous. Auth., 716 F.3d 218, 224 (1st Cir. 2013).

■ Federal law does not create the cause of action in this instance, for there is no private right of action under either HIPAA or HITECH. See Acara v. Banks, 470 F.3d 569, 571 (5th Cir. 2006) ("We hold there is no private cause of action under HIPAA."); see also HITECH's statutory provisions at 42 U.S.C. §§ 17901–17953 and §§ 300jj–300jj51. TSS concedes as much. See TSS's Opposition to Remand (D.E. 10), at p. 5. Thus, we must determine whether there is an "embedded federal question" that would bestow the Court with arising-under jurisdiction. We note that the Court of Appeals has observed that it "[did] not believe that merely because a court will have to interpret ... federal regulations, it necessarily follows that federal jurisdiction exists." Templeton Bd. of Sewer v. American Tissue Mills, 352 F.3d 33, 40 (1st Cir. 2003). The Court further explained, following the Fourth Circuit's reasoning in Ormet Corp. v. Ohio Power Co., 98 F.3d 799 (4th Cir. 1996),

that " 'the determination of whether a federal issue is sufficiently substantial should be informed by a sensitive judgment about whether the existence of federal judicial power is both appropriate and pragmatic' and that 'at bottom, we must determine whether the dispute is one that Congress intended federal courts to resolve.' " Templeton, 352 F.3d at 40–41 (citing Ormet, at p. 807).

We have reviewed contract number 2012–000076 between ASES and TSS (D.E. 1–3). The purpose of this contract is to provide the indigent population of Puerto Rico that is eligible for both Medicaid and Medicare health insurance coverage (the so-called "dual eligible population") with wraparound medical coverage in the form of a medical health plan called "Mi Salud Platino" which provides physical, mental and dental services, not covered by Medicare, as well as payment for deductibles and gap expenses not covered by Medicare's Part D prescription drugs plan. The contract spells out in various appendixes the full benefits which TSS agreed to provide to the plan's enrollees. It also incorporates in multiple sections the requirement that TSS shall comply with various specified federal laws and regulations as well as with discrete Commonwealth laws and regulations. The Notice of Intention of Imposition of Sanctions sent by ASES to TSS, which initiated the administrative proceeding that TSS seeks to remove here, relied precisely on one of these sections (Section 21) to charge TSS with multiple violations of the Contract's terms and conditions and with specific federal regulations incorporated in the Contract through said Section.

■ But, while the ASES/TSS Contract obligated the parties to abide by numerous federal regulations, we are not persuaded that the mere violation of said regulations that were incorporated into the parties'

contract, which is all that ASES imputes to TSS in its Notice, presents a substantial question of federal law. Simply put, all that ASES avers in its Notice is that TSS breached the Contract when it released protected health information of thousands of plan's enrollees to a subcontractor as well as in the exterior of an information pamphlet it mailed to the plan's beneficiaries. The situation here is no different from that confronted by the Court of Appeals in Municipality of Mayagüez v. CPDO, 726 F.3d 8 (1st Cir. 2013), an action in which the Municipality originally sued CPDO alleging that it had violated several specific regulations issued by the Department of Housing and Urban Development, thus breaching a promise that it would comply at all times with applicable state and federal laws. While the district court in that case had opined that there was federal subject matter jurisdiction given that resolving the dispute between the parties turned heavily upon determining "whether federal regulations, as incorporated into the contract between the parties, were complied with," id., at p. 12, the Court of Appeals determined that the ultimate question was whether the federal issue was sufficiently substantial to warrant the exercise of federal jurisdiction. It further explained that, in order to be substantial, the "federal question must be not only important to the parties, but important to the federal system." Id., at p. 14. The Court of Appeals suggested two instances which would meet this substantiality requirement:

> First, an issue may be substantial where the outcome of the claim could turn on a new interpretation of a federal statute or regulation which will govern a large number of cases. In other words, a case is more likely to be important to the federal system as a whole if it presents "a nearly 'pure issue of law ... that could be settled once and for all'" rather than an issue that is "fact-bound and

situation-specific" and whose holding will more likely be limited to the facts of the case. Empire Healthchoice Assurance [Inc., v. McVeigh], 547 U.S. [677,] at 700–701, 126 S.Ct. 2121, 165 L.Ed.2d 131 [ (2006) ] (quoting R. Fallon, et al., Hart and Wechsler's The Federal Courts and the Federal System 65 (2005 Supp.)); see also Gunn [v. Minton], 568 U.S. 251, 133 S.Ct. [1059,] at 1067, 185 L.Ed.2d 72 [2013) ] (noting that the federal issue in dispute was not important because its resolution was unlikely to have any impact on other patent cases). Second, a federal issue may also be substantial where the resolution of the issue has "broader significance ... for the Federal Government." Gunn, 133 S.Ct. at 1066. That is, because "[t]he Government has a direct interest in the availability of a federal forum to vindicate its own administrative action," Grable [& Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.], 545 U.S. [308,] at 315, 125 S.Ct. 2363, 162 L.Ed.2d 257 [ (2005) ], the Court has repeatedly suggested that a federal issue is more likely to be substantial where a claim between two private parties, though based in state law, directly challenges the propriety of an action taken by "a federal department, agency, or service." Empire Healthchoice Assurance, 547 U.S. at 700, 126 S.Ct. 2121 (discussing Grable); see also Smith v. Kan. City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921) (holding that a shareholder suit seeking to enjoin a private company from investing in certain federal bonds on the grounds that the statute authorizing the issuance of those bonds was unconstitutional presented substantial federal issue).

Municipality of Mayagüez, 726 F.3d at 14. The Court concluded that although the ultimate question in the Mayagüez contract claim was whether CPDO had failed

to comply with federal regulations, and thereby breached the contract, that dispute was a "'fact-bound and situation-specific' claim whose resolution is unlikely to have any impact on the development of federal law." Id.

Such is the situation here. A review of ASES' Notice of Intention of Imposition of Sanctions reveals that the looming dispute between the parties is overwhelmingly factual, rather than involving disputes over the meaning of the various federal regulations incorporated in their contract. In contrast with the situation presented in the case cited by TSS, Ken Valley Housing Group v. Maine State Housing Authority, 716 F.3d 218 (1st Cir. 2013), there is no indication here that the outcome of the proceeding before ASES would impact the ability of any federal agency to carry out its business. Cf. Municipality of Mayagüez, 726 F.3d at 15. Additionally, and paraphrasing Municipality of Mayagüez, there is no suggestion that a federal agency either drafted the contract between the parties or, for that matter, issued instructions to TSS that led to the alleged breach, nor is there a legal question present that will apply in a host of other cases.

Accordingly, as the proceeding before ASES "present[s] primarily factual disputes and would have little impact on the development of federal law or the activities of a federal agency, we conclude that the federal issue in this case is not substantial in the relevant sense to warrant federal jurisdiction." Id., at p. 17. Thus, there is no basis for the removal of said proceeding under 28 U.S.C. § 1441(a).

### Removal under 28 U.S.C. § 1442(a)(1)

█ As noted above, TSS also avers that removal of the proceedings initiated by ASES against it is warranted under 28 U.S.C. § 1442(a)(1), the so-called federal officer removal statute. Section 1442 allows removal to a federal forum of any civil or criminal action against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . ." Four elements are required for removal under § 1442(a)(1): (1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between the defendant's actions and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a "person," within the meaning of the statute.

█ To satisfy the "acted under" requirement of § 1442(a)(1), a private person's actions "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 152, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007) (emphasis in original). It is not enough that a private person or entity merely operates in an area directed, supervised and monitored by a federal regulatory agency or other such federal entity. Id. at 145, 127 S.Ct. 2301. Watson clearly established that not all relationships between private entities or individuals and the federal government suffice to effect removal under the federal officer removal statute. In order to fall within the scope of the federal officer removal statute, "[t]he assistance that private contractors provide federal officers [must go] beyond simple compliance with the law and help[ ] officers fulfill other basic governmental tasks." Id. at 153, 127 S.Ct. 2301.

█ Granted that in this instance compliance with federal laws is implicated and that TSS is subject to federal regulations as a government contractor. But, under Wilson, this by itself is not enough to satisfy the requirement that TSS "has acted under the direction of a federal officer."

Id., at 152, 127 S.Ct. 2301 (explaining that "compliance with the law (or acquiescence to an order) [is not] 'acting under' a federal official who is giving an order or enforcing the law") (emphasis in original). TSS has not colorably established that, beyond complying with the law, it was actually assisting or helping to carry out any duties or tasks assigned by a <u>federal</u> superior. Indeed, we have reviewed TSS's contract with ASES and, aside from requiring it to comply with various federal laws and a myriad of federal regulations, there is nothing there requiring TSS to affirmatively act in its contractual relationship with ASES as if it were a surrogate of the federal government. We, therefore, find that TSS was not acting under the direction of a federal officer in this instance, and removal is not appropriate either under 28 U.S.C. § 1442(a)(1).

### Conclusion

For the reasons stated above, the Motion for Remand Pursuant to 28 U.S.C. § 1447(c) filed by ASES on April 10, 2014 (**D.E. 6**) is GRANTED. Accordingly, this action is REMANDED to the Puerto Rico Health Insurance Administration (ASES). The Clerk of the Court shall proceed forthwith to remand the action as ordered.

SO ORDERED.